## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **TRAVIS DUCOTE** | * |
| 3747 Algonquin Trail | |
| Snow Hill, MD 21863 | * |
| | |
| **DIPAK RAMKUMAR** | * |
| 36 Fountain Way | |
| West Lebanon, NH 03784 | * |
| | |
| For Themselves and Others Similarly Situated, | * |
| | |
| Plaintiffs, | * |
| | |
| v. | *   Case No._____ |
| | |
| **CURIOSITYSTREAM, INC.** | * |
| c/o Corporation Trust Inc. | |
| 2405 York Road, Suite 201 | *   JURY TRIAL DEMANDED |
| Lutherville, MD 21093 | |
| | * |
| Defendant. | |
| | * |

## CLASS ACTION COMPLAINT

Plaintiffs Travis DuCote and Dipak Ramkumar ("Plaintiffs"), individually and on behalf of all other persons similarly situated, by and through their attorneys, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action suit brought against Defendant CuriosityStream Inc. ("Defendant" or "CuriosityStream") for violating the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, by collecting and sharing highly-specific and sensitive information about consumers' video consumption habits without requisite consent.

2.      CuriosityStream develops, owns, and operates CuriosityStream.com, a streaming video platform broadcasting "the best documentaries on the planet."[1]

3.      CuriosityStream asks consumers "[w]hat [they] are curious about," and delivers them interesting, informative, and educational videos on a variety of subjects, including science, history, technology, nature, arts and society, and crime.

4.      As Congress has recognized, such "films are the intellectual vitamins that fuel the growth of individual thought." S. Rep. No. 100-599, at 7 (Oct. 21, 1988) (citing Senate Judiciary Subcommittee on Technology and the Law, Hearing Tr. at 10 (Aug. 3, 1988)).

5.      Indeed, the videos people watch can often reveal their private politics, religious views, or sexuality—in other words, their most personal and intimate details. *Id*.

6.      The VPPA was enacted to give consumers the power to "maintain control over personal information divulged and generated in exchange for receiving services from video tape service providers." S. Rep. No. 100-599, at 8. "The Act reflects the central principle of the Privacy Act of 1974: that information collected for one purpose may not be used for a different purpose without the individual's consent." *Id*.

7.      CuriosityStream violated the VPPA by knowingly disclosing personally identifiable information ("PII")—including a record of every documentary video viewed by Plaintiffs and Class members—to unrelated third parties without their consent.

8.      CuriosityStream intentionally installed computer code on its website, called the "Meta Tracking Pixel," which tracks and records Plaintiffs and Class members' private video consumption.

9.      While Plaintiffs and the Class watched videos on CuriosityStream.com, this code

---

[1] CURIOSITYSTREAM, https://curiositystream.com.

collected, without their knowledge or consent, Plaintiffs and Class members' video-watching history and disclosed it to Meta Platforms, Inc. ("Meta" or "Facebook").

**PARTIES**

10.     Plaintiff Travis DuCote ("Plaintiff DuCote") is, and has been at all relevant times, a citizen of Maryland, who resides in Worcester County.   Plaintiff has subscribed to CuriosityStream since at least August 2022 and has viewed videos on CuriosityStream.com as part of his subscription which he pays a monthly subscription for.

11.     Plaintiff has a Facebook account.

12.     Since creating an account, Plaintiff DuCote frequented CuriosityStream.com to watch documentary shows, and did so on the same device on which Plaintiff DuCote had logged into Facebook.

13.     Upon information and belief, when Plaintiff DuCote watched videos on CuriosityStream.com, Defendant disclosed event data, which recorded and disclosed the video's title, URL, and video description to Meta. Alongside this event data, Defendant also disclosed identifiers for Plaintiff DuCote, including the c_user and fr cookies to Meta.

14.     Plaintiff Dipak Ramkumar ("Plaintiff Ramkumar") is, and has been at all relevant times, a citizen of New Hampshire, who resides in Grafton County.   Plaintiff has subscribed to CuriosityStream since at least November 2021 and has viewed videos on CuriosityStream.com as part of his subscription which he pays a monthly subscription for.

15.     Plaintiff has a Facebook account.

16.     Since creating an account, Plaintiff Ramkumar frequented CuriosityStream.com to watch documentary shows, and did so on the same device on which Plaintiff Ramkumar had logged into Facebook.

17.     Upon information and belief, when Plaintiff Ramkumar watched videos on CuriosityStream.com, Defendant disclosed event data, which recorded and disclosed the video's title, URL, and video description to Meta. Alongside this event data, Defendant also disclosed identifiers for Plaintiff Ramkumar, including the c_user and fr cookies to Meta.

18.     Defendant CuriosityStream Inc. is a Delaware corporation with its principal place of business at 8484 Georgia Ave, Silver Spring, Maryland 20910. Defendant develops, owns, and operates CuriosityStream.com, which is used throughout the United States.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because it arises under a law of the United States (*i.e.*, the VPPA).

20.     This Court has personal jurisdiction over Defendant because it is a Maryland corporation with its principal place of business in this state.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

### A.    The VPPA

22.     As stated by Senator Patrick Leahy during the enactment of the VPPA, "[i]n an era of interactive television cables, the growth of computer checking and check-out counters, of security systems and telephones, all lodged together in computers, it would be relatively easy at some point to give a profile of a person and tell what they buy in a store, what kind of food they like, what sort of television programs they watch, who are some of the people they telephone. I think that is wrong. I think that really is Big Brother, and I think it is something that we have to guard against." S. Rep. 100-599.

4

23.     To address these concerns, the VPPA prohibits (1) a video service provider (2) from knowingly disclosing, to any person (3) a claimant's personally identifiable information ("PII"). 18 U.S.C. § 2710(b)(1). A video service provider is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). The VPPA defines PII as "information which identifies a person as having requested or obtained specific video materials or services from a video service provider." 18 U.S.C. § 2710(a)(3). For each violation, "[a] court may award actual damages but not less than liquidated damages in an amount of $2,500," as well as punitive damages and attorneys' fees. 18 U.S.C. § 2710(c)(2).

**B.      The Meta Tracking Pixel**

24.     Facebook.com is the largest social networking website on the planet, touting billions of monthly active users. Facebook describes itself as a "real identity platform,"[2] meaning users are allowed only one account and must share "the name they go by in everyday life."[3] To that end, when creating an account, users must provide their first and last name, along with their birthday and gender.

25.     Meta owns Facebook and generates revenue by selling advertising space on Facebook, and other applications it owns.  Meta sells advertising space by highlighting its ability to target users. Meta targets users effectively because it surveils user activity both on and ***off its site***. This allows Meta to make inferences about users beyond what they explicitly disclose.

26.     One such method of collecting off-site information is the Meta Tracking Pixel that is offered to advertisers, such as Defendant, and in exchange for this free tool advertisers provide

---

[2] Sam Schechner and Jeff Horwitz, *How Many Users Does Facebook Have? The Company Struggles to Figure It Out*, WALL. ST. J. (Oct. 21, 2021).
[3] FACEBOOK, COMMUNITY STANDARDS, PART IV INTEGRITY AND AUTHENTICITY, https://www.facebook.com/communitystandards/integrity_authenticity.

access to their customers.   In turn, the tool enables advertisers to receive certain analytic information and track the users of their own sites.

27.     The Meta Tracking Pixel is a piece of code that advertisers, like Defendant, can integrate into their website by actively placing a code snippet on its website and providing access to their users. Once activated, the Meta Tracking Pixel "tracks the people and type of actions they take."[4] When the Meta Tracking Pixel captures an action, it sends a record to Facebook. Once this record is received, Meta processes it, analyzes it, and assimilates it into datasets.

28.     Advertisers control what actions—or, as Meta calls it, "events"—the Meta Tracking Pixel will collect, including the website's metadata, along with what pages a visitor views.[5] Advertisers can also configure the Meta Tracking Pixel to track other events. Meta offers a menu of "standard events" from which advertisers can choose, including what content a visitor views or purchases.[6]  An advertiser can also create their own tracking parameters by building a "custom event."[7]

## C.     CuriosityStream and the Meta Pixel

29.     CuriosityStream.com hosts and delivers thousands of documentaries and educational videos in a variety of subjects, including science, history, technology, nature, arts and society, and crime. It asks its consumers what they are curious about and gives them streaming videos they can watch.

---

[4] FACEBOOK, RETARGETING, https://www.facebook.com/business/goals/retargeting.
[5] *See* FACEBOOK, FACEBOOK PIXEL, ACCURATE EVENT TRACKING, ADVANCED, https://developers.facebook.com/docs/facebook-pixel/advanced/; *see also* FACEBOOK,  BEST PRACTICES FOR FACEBOOK PIXEL SETUP, https://www.facebook.com/business/help/218844828315224?id=1205376682832142.
[6] FACEBOOK, SPECIFICATIONS FOR FACEBOOK PIXEL STANDARD EVENTS, https://www.facebook.com/business/help/402791146561655?id=1205376682832142.
[7] FACEBOOK, ABOUT STANDARD AND CUSTOM WEBSITE EVENTS, https://www.facebook.com/business/help/964258670337005?id=1205376682832142.

30.     Unknown to these consumers, however, CuriosityStream also passes users' video histories to Meta. And so, for many CuriosityStream consumers, what may have started out as movie night alone in the privacy of one's own home, with the Meta Tracking Pixel, has become a surprisingly public affair.

31.     The CuriosityStream.com website hosts the Meta Tracking Pixel and transmits two distinct events to Meta. The first event is PageView. The second event is Microdata.  PageView discloses a webpage's Universal Resource Locator ("URL"), along with whether a viewer has an account, to Meta. If a CuriosityStream consumer uses CuriosityStream's search bar, that text is reflected in the website's URL, which, in turn is disclosed to Facebook. So if a CuriosityStream consumer is curious about "aliens on the moon," Meta knows the customer searched for "aliens on the moon."

32.     Additionally, if a CuriosityStream consumer watches a particular video, that information is reflected in the webpage's URL as well. Each video on CuriosityStream.com has a unique number (ranging from one to four digits), which is disclosed to Meta through the PageView event.

33.     Worse yet, the second Meta Tracking Pixel event—Microdata—discloses the video's title as well as the video description.  Example microdata for a user watching the video titled, "SLS: NASA's Mega Rocket" is below.

Figure 1:



34.     Both events, independently, permit an ordinary person to identify a video's content, title, and location.

35.     When a visitor watches a video on CuriosityStream.com while logged into Facebook, Defendant compels a visitor's browser to transmit an identifying "computer cookie" to Meta called "c_user." The c_user cookie contains that visitor's unencrypted Facebook ID. When accessing one of the above videos, for example, Defendant compelled the browser to send cookies to Meta.

36.     The c_user cookie is personally identifiable information because it contains a consumer's unencrypted Facebook ID. A Facebook ID allows *anybody*—not just Facebook—to identify the individual CuriosityStream consumer with a Facebook account. If one types

www.facebook.com/[FacebookID] a into web browser, it will load that individual's Facebook page.

37.    An example of the c_user cookie being sent to Facebook is below.

**Figure 2**



38.    Moreover, the Meta Tracking Pixel transmits additional data to Meta through the fr cookie.  The fr cookie contains, at least, an encrypted Facebook ID and a browser identifier.[8] Facebook uses the fr cookie to identify particular users.[9]

39.    Without a corresponding Facebook ID, the fr cookie contains, at least, an abbreviated and encrypted value that identifies the browser. Facebook uses this for targeted advertising to the identified individual.

40.    Meta, at a minimum, uses the fr and c_user cookies to link to Facebook IDs and corresponding Facebook profiles.

41.    As previously stated, a Facebook ID is personally identifiable information. Anyone

---

[8] DATA PROTECTION COMMISSIONER, FACEBOOK IRELAND LTD, REPORT OF RE-AUDIT (Sept. 21, 2012), http://www.europe-v-facebook.org/ODPC_Review.pdf.
[9] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES,
https://www.facebook.com/policy/cookies/.

can identify a Facebook profile—and all personal information publicly listed on that profile—by appending the Facebook ID to the end of https://facebook.com.

42.     Through the Meta Tracking Pixel's code, these cookies combine the identifiers with the event data, allowing Meta to know, among other things, what CuriosityStream.com videos a user has requested and obtained.

43.     CuriosityStream discloses these identifiers so Meta can match them with a corresponding Facebook profile and link it to a CuriosityStream consumer's subsequent activity on CuriosityStream.com.

44.     By compelling a visitor's browser to disclose the c_user and fr cookies alongside event data for videos, CuriosityStream knowingly discloses information sufficiently permitting an ordinary person to identify a specific individual's video viewing behavior.

**D.      Defendants' Failure to Abide By Its Contractual Arbitration Obligations**

45.     Plaintiffs, along with other CuriosityStream customers, sought to resolve these claims through arbitration with JAMS.

46.     Plaintiffs affirmatively agreed to arbitrate through CuriosityStream's selected arbitration mechanism by sending notice to Defendant pursuant to its pre-dispute arbitration provision in its Terms of Use.

47.     CuriosityStream confirmed receipt of the notice but failed to engage in pre-dispute resolution discussions and failed to respond to communications from Plaintiffs' counsel.

48.     Plaintiffs were unable to resolve the dispute and initiated arbitration in the JAMS arbitration forum as indicated by CuriosityStream's arbitration provision.

49.     All requisite fees were paid by Plaintiffs as well as for the other consumers that sought to resolve their claims through arbitration.

50.     JAMS informed Defendant that the arbitrations had been properly filed and opened.

51.     Defendant failed to pay its share of the fees and abide by its own arbitration provision.

52.     JAMS sent correspondence to Defendant warning that the matter would be closed due to Defendant's non-payment of the requisite fees to continue the arbitration.[10]

53.     On May 21, 2024, JAMS closed the file due to non-participation of CuriosityStream.[11]

## CLASS ALLEGATIONS

54.     **Class Definition**: Plaintiffs seek to represent a class of similarly situated individuals defined as all persons in the United States who have Facebook and CuriosityStream.com accounts, and viewed videos on CuriosityStream.com (the "Class").

55.     **Numerosity (Fed. R. Civ. P. 23(a)(1))**: At this time, Plaintiffs do not know the exact number of members of the aforementioned Class. However, given the popularity of Defendant's website, the number of persons within the Class is believed to be so numerous that joinder of all members is impractical.

56.     **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3))**: There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual members of the Class and include:

(a)     whether Defendant collected Plaintiffs' and the Class's PII;

(b)     whether Defendant unlawfully disclosed and continues to disclose its users'

---

[10] A copy of the correspondence is attached hereto as Exhibit A.

[11] A copy of the May 21, 2024 letter attached hereto as Exhibit B.

PII in violation of the VPPA;

(c)     whether Defendant's disclosures were committed knowingly;

(d)     whether Defendant disclosed the PII of Plaintiffs and the Class without consent.

57.     **Typicality (Fed. R. Civ. P. 23(a)(3))**: Plaintiffs' claims are typical of those of the Class because Plaintiffs, like all members of the Class, used CuriosityStream.com to watch videos, had their PII collected and disclosed by Defendant, and had their communications recorded by Defendant, without their consent.

58.     **Adequacy (Fed. R. Civ. P. 23(a)(4))**: Plaintiffs have retained and are represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation, including litigation concerning the VPPA. Plaintiffs and their counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiffs are able to fairly and adequately represent and protect the interests of the Class. Neither Plaintiffs nor their counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Class. Plaintiffs have raised viable statutory claims of the type reasonably expected to be raised by members of the Class, and will vigorously pursue those claims. If necessary, Plaintiffs may seek leave of this Court to amend this Class Action Complaint to include additional representatives to represent the Class as necessary, additional claims as may be appropriate, or to amend the definition of the Class to address any steps that Defendant took.

59.     **Superiority (Fed. R. Civ. P. 23(b)(3))**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Even if every member of the Class could afford to pursue individual litigation, the court system could not. It would be unduly burdensome

to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiffs anticipate no difficulty in the management of this action as a class action.

## CAUSES OF ACTION

## COUNT I

### Violation of the Video Privacy Protection Act 18 U.S.C. § 2710, *et seq.*

60.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

61.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendant.

62.     Defendant is a "video tape service provider" because it creates, hosts, and delivers thousands of videos on its website, thereby "engag[ing] in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). In particular, Defendant provides a library of audiovisual material for a monthly fee. Defendant also uses the videos to collect and disclose viewers' PII so it can later retarget them for advertisements.

63.     Plaintiffs and members of the Class are "consumers" because they have accounts with CuriosityStream.com and pay to watch videos. 18 U.S.C. § 2710(a)(1).

64.     Defendant disclosed to a third party, Meta, Plaintiffs and the Class members' personally identifiable information. Defendant utilized the Meta Tracking Pixel to compel Plaintiffs' web browser to transfer Plaintiffs' identifying information, like their Facebook IDs, along with Plaintiffs' event data, like the title of the videos they viewed.

65.     Plaintiffs and the Class members viewed videos using CuriosityStream.com.

66.     Defendant knowingly disclosed Plaintiffs' PII because it used that data to build audiences on Meta and retarget them for its advertising campaigns.

67.     Plaintiffs and Class members did not provide Defendant with any form of consent—either written or otherwise—to disclose their PII to third parties.

68.     Nor were Defendant's disclosures made in the "ordinary course of business" as the term is defined by the VPPA. In particular, Defendant's disclosures to Meta were not necessary for "debt collection activities, order fulfillment, request processing, [or] transfer of ownership." 18 U.S.C. § 2710(a)(2).

69.     On behalf of themselves and the Class, Plaintiffs seek: (i) declaratory relief; (ii) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with VPPA's requirements for protecting a consumer's PII; (iii) statutory damages of $2,500 for each violation of the VPPA pursuant to 18 U.S.C. § 2710(c); and (iv) reasonable attorneys' fees and costs and other litigation expenses.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek a judgment against Defendant, individually and on behalf of all others similarly situated, as follows:

(a)     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiffs DuCote and Ramkumar as representatives of the Class, and naming

Plaintiffs' attorneys as Class Counsel to represent the Class;

    (b)    For an order declaring that Defendant's conduct violates the statutes referenced herein;

    (c)    For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

    (d)    An award of statutory damages to the extent available;

    (e)    For punitive damages, as warranted, in an amount to be determined at trial;

    (f)    For prejudgment interest on all amounts awarded;

    (g)    For injunctive relief as pleaded or as the Court may deem proper; and

    (h)    For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.

Dated: July 2, 2024                Respectfully Submitted,

                By:        */s/ William N. Sinclair*
                        William N. Sinclair (Bar No. 28833)
                        **SILVERMAN THOMPSON**
                        **SLUTKIN & WHITE, LLC**
                        400 E. Pratt St., Suite 900
                        Baltimore, MD 21202
                        Telephone:    (410) 385-2225
                        Facsimile:    (410) 547-2432
                        Email: bsinclair@silvermanthompson.com

                By:        */s/Kevin G. Cooper*
                        Michael A. Innes (*pro hac vice* forthcoming)
                        Kevin G. Cooper (*pro hac vice* forthcoming)
                        Jordan M. Steele (*pro hac vice* forthcoming)
                        **CARELLA BYRNE CECCHI**
                        **BRODY & AGNELLO, P.C.**
                        5 Becker Farm Rd.
                        Roseland, NJ 07068
                        Telephone:    (973) 994-1700
                        Facsimile:    (973) 994-1744

E-mail: minnes@carellabyrne.com
     kcooper@carellabyrne.com
     jsteele@carellabyrne.com

*Attorneys for Plaintiffs*